Cedric THARPE, Appellant–Defendant,

v.

STATE of Indiana, Appellee–Plaintiff.

No. 49A04–1101–CR–24.

Court of Appeals of Indiana.

Oct. 14, 2011.

Michael R. Fisher, Marion County Public Defender Agency, Indianapolis, IN, Attorney for Appellant.

Gregory F. Zoeller, Attorney General of Indiana, Ellen H. Meilaender, Deputy Attorney General, Indianapolis, IN, Attorneys for Appellee.

1. Ind.Code §§ 35–41–5–1 and 35–42–1–1.

## OPINION

MAY, Judge.

Cedric Tharpe appeals his conviction of Class A felony attempted murder.[1] He raises the following issues for our review:

1. Whether Tharpe was denied his right to a fair and unbiased judge;

2. Whether the trial court abused its discretion when it denied Tharpe's motion for a continuance; and

3. Whether the State presented sufficient evidence to convict Tharpe.

We affirm.

## FACTS AND PROCEDURAL HISTORY

Around 11:00 p.m. on October 19, 2009, Officer Matthew Churchman was patrolling in his marked police car when he heard shots fired. He turned down a nearby alley and saw Tharpe run behind an SUV parked in the alley. Officer Churchman pulled up to the SUV, loudly identified himself as a police officer, and ordered Tharpe to show his hands. Tharpe looked at Officer Churchman for three to four seconds, and then he fired multiple rounds from an AK–47 in Officer Churchman's direction: one bullet struck Officer Churchman's windshield, a second struck the handcuffs hanging on Officer Churchman's belt, and a bullet fragment injured Officer Churchman's thigh. Officer Churchman returned fire. Tharpe attempted to drive away, but struck a telephone pole and fled on foot.

The State charged Tharpe with Class A felony attempted murder. After a two-day trial the jury found Tharpe guilty as charged. Tharpe filed a motion for a new trial, contending his counsel did not have adequate time to prepare his defense.

The trial court denied his motion and imposed a forty-year sentence.

## DISCUSSION AND DECISION

### 1. Denial of Right to Fair and Unbiased Judge

▉▉▉ Tharpe claims he was denied his due process right to a fair and unbiased judge based on comments and actions the judge made during his trial. Our standard of review regarding judicial impartiality is well-settled:

> When the impartiality of the trial judge is challenged on appeal, we will presume that the judge is unbiased and unprejudiced. To rebut that presumption, the defendant "must establish from the judge's conduct actual bias or prejudice that places the defendant in jeopardy." "To assess whether the judge has crossed the barrier into impartiality, we examine both the judge's actions and demeanor."

Perry v. State, 904 N.E.2d 302, 307–08 (Ind.Ct.App.2009) (citations omitted), trans. denied. Merely asserting bias and prejudice does not make it so. Smith v. State, 770 N.E.2d 818, 823 (Ind.2002). Bias and prejudice places a defendant in jeopardy "only where there is an undisputed claim or where the judge expressed an opinion of the controversy over which the judge was presiding." Id. Adverse rulings are not sufficient to show bias or prejudice on the part of the judge. Flowers v. State, 738 N.E.2d 1051, 1060 n. 4 (Ind.2000), reh'g denied.

▉▉▉ Many of Tharpe's claims of bias are waived because he did not preserve them at trial. See Pigg v. State, 929 N.E.2d 799, 803 (Ind.Ct.App.2010) (claims may not be raised for the first time on appeal). To escape this waiver, Tharpe contends the cumulative effect of the comments and ac-

tions rose to the level of fundamental error. To be fundamental, an error must "constitute a blatant violation of basic principles, the harm or potential for harm must be substantial, and the resulting error must deny the defendant fundamental due process." Deane v. State, 759 N.E.2d 201, 204 (Ind.2001). "[U]nder some circumstances the cumulative effect of trial errors may warrant reversal even if each might be deemed harmless in isolation[.]" Hubbell v. State, 754 N.E.2d 884, 895 (Ind. 2001).

### a. Judge's Comment during Voir Dire

During voir dire, Tharpe objected to the exclusion of a prospective juror who was African American. When asked by the State whether Tharpe's challenge was based on Batson v. Kentucky, 476 U.S. 79, 106 S.Ct. 1712, 90 L.Ed.2d 69 (1986), the judge responded, "I don't know what it was." (Tr. at 18.) Tharpe's counsel[2] then explained why she thought she had asserted a Batson challenge, and the judge responded, "Well, basically the criminal justice system does not have the ability to call only African Americans to hear a case where only an African American is charged." (Id. at 20.) Tharpe claims these two comments "served only to demean counsel in front of her client." (Br. of Appellant at 7.) Tharpe has not, however, explained how this comment prejudiced the jury against him or impaired his defense; thus he has not demonstrated he was placed in jeopardy or that reversal would be appropriate.

### b. Cross–Examination of Officer Churchman

Tharpe claims the trial court should not have sustained the State's objections to his questions on cross examination because that "denied [defense counsel] the ability

**2.** Tharpe's appellate counsel was not his trial counsel.

to pursue a very legitimate defense strategy of impeachment." (Br. of Appellant at 9.) We disagree.

■ Tharpe attempted to question the officer about a prior inconsistent statement. Before a party may use a prior inconsistent statement to impeach a witness, "a proper foundation must be laid to warn the witness and enable him to admit, explain, or deny the prior statement." *Coleman v. State*, 588 N.E.2d 1335, 1340 (1992), *trans. denied.* To lay such a foundation, counsel "must first call the witness's attention to the attendant circumstances: 'the time when, the place where, and the person to whom the contradictory statement is alleged to have been made.'" *Id.*

The following exchange occurred between Tharpe's counsel and Officer Churchman:

Counsel: [D]o you recall on July 15 you gave a statement.

Churchman: Okay.

Counsel: And if I were to hand you your statement, would that help refresh your memory as to what this person's doing with respect to whether or not that person was attempting to get into the vehicle, would that help your memory?

(Tr. at 73.) The State objected, on the grounds defense counsel did not lay a sufficient foundation for the testimony regarding Officer Churchman's statement on July 15. The trial court sustained the objection:

There's a proper method for impeaching a witness with a prior inconsistent statement and the rules required that you give him an opportunity to deny ... or (unintelligible) having made the statement and you haven't said, do you remember (unintelligible) on such and such a date, being at this place, giving a

deposition and being asked this question.... That's what you have to do. (*Id.* at 74.) Defense counsel continued cross-examining Officer Churchman, asking him if he recalled being asked on July 15 if he knew what Tharpe's intention might have been when Tharpe shot at Officer Churchman. Officer Churchman replied, "No, I don't recall that and it sounds like that would have been his intention prior to trying to kill me." (*Id.* at 76.) Tharpe's counsel tried to refresh the officer's memory of his prior statement, then asked the same question regarding Tharpe's intention. The State objected on the grounds the question had been asked and answered, and the court again sustained the State's objection.

The trial court properly sustained the State's first objection because defense counsel did not lay a proper foundation for the introduction of Officer Churchman's alleged prior inconsistent statement. The State's second objection was also properly sustained because the question defense counsel asked was virtually identical to her earlier question on the same topic, and Officer Churchman had already answered that question on the record. As the court properly sustained both of the State's objections, they cannot be used to demonstrate bias or prejudice on the part of the Judge. Further, Tharpe has not shown how these rulings precluded a fair trial, and he admits in his brief he is unable to do so because his counsel did not make an offer of proof at trial.

c. *Judge's Comment during Preliminary Questioning of Witness*

During the redirect testimony of James Roth, a crime scene investigator, the State asked, "The magazine of the AK–47 assault rifle, Mr. Roth, how many bullets were left in the magazine?" (*Id.* at 137.) Defense counsel objected, and requested

permission to ask a preliminary question. Defense counsel asked, "Did you examine the rifle?" (*Id.* at 138.) Roth answered, and the State then indicated the question Tharpe's counsel asked was the same as a question the State had asked earlier, and the trial court replied, "Apparently the objection was just to ask the same question that the State asked?" (*Id.* at 138.) Defense counsel was then given an opportunity to explain why she asked the preliminary question, and the witness was released.

Tharpe claims the judge's statements "could have resulted in an inference by [the jury] that the Court did not accord the same respect to defense counsel as it did the State." (Br. of Appellant at 10.) Tharpe has not indicated how these statements by the judge prejudiced him, except to assert the comments were "sarcastic." (*Id.*) In order to succeed on a claim of fundamental error, Tharpe must demonstrate he was denied a fair trial based on the cumulative effect of the judge's behavior, and he has not done so here.

### d. *Judge's Facial Expressions*

Tharpe asserts the judge rolled her eyes at various times during the trial, and those facial expressions prejudiced the jury. We disagree.

At the end of Roth's testimony, the court recessed. Before the jurors returned, defense counsel stated:

> Your Honor, before we go back on the record I need to make a record and I'm not sure it's going to be a record the Court will like but I'm sorry but Your Honor, I believe the Court's rolling of its eyes and the facial gestures the Court is making when I make my objections, I believe that's prejudicing my client[.]

(Tr. at 141.) The following exchange between the judge and defense counsel then occurred:

Court: You know, I'm going to stop you for a second. If you see me do something on the bench that you believe in your mind is a look of disdain you need to bring it to my attention because I guarantee you this Court has no disdain—

Defense Counsel: That's . . .

Court: —and doesn't intend to express any disdain. I specifically do not recall any of the things that you're talking about. I don't recall ever rolling my eyes. I certainly don't recall having a look of disdain on my face. I think perhaps you're reading something into it because I have overruled some of your objections and because I have tried to help you by instructing you as to how to do some work with prior inconsistent statements. You know, I'm trying to be very patient—

Defense Counsel: Your Honor . . .

Court: —with you.

(*Id.* at 143.) The Court went on to say:

> You know, if I had done something like roll my eyes, if I ever roll my eyes in court I expect someone to bring that to my attention. I would not in any way do anything to try to prejudice you or your client in any way. Now, when you don't follow the rules of evidence there does come a time where we reach what I think is something that's maybe going to hurt you, you know? Sometimes I'll pause and look at you, you know, to try to see if you really mean what you're saying, if you've actually thought that through. Now, the fact that I am a human being that has some facial expressions, let me assure you that none of my facial expressions have, at any time in any way, indicated any disdain for you or your client or for the state of Indiana for that matter.

(*Id.* at 143–44.)

The jury was brought back into the courtroom, and the next witness was

sworn. At the beginning of the next day's testimony, the court told the jury:

> Before we begin I want to instruct you ladies and gentlemen that if at any time throughout the trial you have noticed any sort of facial expression that I might have, you must disregard that and not speculate as to what, if anything, that might mean at all. Certainly it has absolutely nothing to do with this trial, all right? And it's no indication of what you should think, what you should believe or what your verdict should be, all right?

(*Id.* at 164.)

Any prejudice from the judge's facial expressions was cured when the judge admonished the jury to disregard them. We presume juries follow the admonitions of the court and admonitions cure any prejudice resulting from an error. *Kocielko v. State*, 938 N.E.2d 243, 252 (Ind.Ct.App.2010), *trans. denied.* As Tharpe has not overcome those presumptions, we find no error.

### e. *Meeting with Defendant during Lunch Break*

On the second day of trial, counsel asked the court to allow her to confer with Tharpe over the lunch break. The court granted her request, saying, "You can talk with him back there but I don't think in the courtroom." (Tr. at 256.) Tharpe argues he could not talk to his counsel during the lunch break because the courtroom deputy took a lunch break at that time as well.

Until Tharpe's motion for a new trial, the trial court was unaware defense counsel did not meet with Tharpe during the lunch break. After the lunch break that day, the State finished its case, and the defense asked for a directed verdict. Tharpe did not inform the trial court he was unable to confer with counsel, and he cannot now complain the trial court denied him a fair trial. *See Wilson v. State*, 931 N.E.2d 914, 919 (Ind.Ct.App.2010) (failure to raise issue at trial court waives the issue for appellate review), *trans. denied.*

### f. *Rulings on State's Objections*

During Tharpe's testimony, the State made multiple objections that were sustained. Tharpe argues the trial court sustained objections that defense counsel was asking leading questions and asking questions already answered, while allowing the State to ask complex questions on cross examination. Tharpe did not object to the State's questions at trial, nor does he indicate how the rulings were incorrect, except to argue, "Neither the State nor the court offered an explanation of how these are leading questions under Evid. Rule 611(c)." (Br. of Appellant at 12.) As we presume the trial court knows and follows the applicable law, *Thurman v. State*, 793 N.E.2d 318, 321 (Ind.Ct.App.2003), and Tharpe has not overcome that presumption, we cannot say the trial court acted inappropriately in its rulings.

### g. *Denial of Request to Question Officer about Tharpe's Statement*

After the State's cross-examination of Tharpe, defense counsel called Detective Hagan, who interviewed Tharpe after the crime. The State objected on hearsay grounds to any questions regarding statements Tharpe made to the detective. Defense counsel acquiesced to the objection and it was sustained, so defense counsel did not ask Detective Hagan about statements Tharpe made to him.

On appeal, Tharpe argues the trial court's ruling was erroneous, but defense counsel was too intimidated to challenge it. As Tharpe did not make an offer of proof it is impossible for us to determine if any relevant evidence was improperly excluded, and his assertion of error is therefore

waived. *See Carter v. State*, 932 N.E.2d 1284, 1287 (Ind.Ct.App.2010) ("The purpose of an offer to prove is to enable the trial court and this court to determine the admissibility and relevance of the proffered evidence. The failure to make an offer to prove results in a waiver of the asserted evidentiary error.") (citations omitted).

■ In cases where we have found judicial bias or prejudice, the judges behaved improperly multiple times. *See, e.g., Everling v. State*, 929 N.E.2d 1281, 1286 (Ind. 2010) (judge made multitude of disparaging comments about counsel's performance); *Brannum v. State*, 267 Ind. 51, 54–55, 366 N.E.2d 1180, 1183 (1977) (comments about witness testimony in front of the jury). Ultimately, Tharpe has alleged only legally-correct adverse rulings, a single incidence of sarcasm, and inappropriate facial expressions. Adverse rulings, without more, do not amount to fundamental error, *see Flowers*, 738 N.E.2d at 1060 n. 4 (adverse rulings by the trial court do not alone constitute bias or prejudice), and the trial court admonished the jury to disregard any facial expressions made by the judge. Tharpe has not demonstrated he was denied a fair trial.

### 2. *Denial of Continuance*

■ When, as here, a party moved for a continuance not required by statute,[3] we review the court's decision for abuse of discretion. *Flake v. State*, 767 N.E.2d 1004, 1008 (Ind.Ct.App.2002). An abuse of discretion occurs when the ruling is against the logic and effect of facts and circumstances before the court or where the record demonstrates prejudice from denial of the continuance. *Id.* Continuances to allow more time for preparation are generally disfavored in criminal cases. *Risner v.*

*State*, 604 N.E.2d 13, 14 (Ind.Ct.App.1992), *trans. denied.* Tharpe claims the denial of his motion for continuance was an abuse of discretion because it further demonstrated the court's impartiality and prejudiced his defense because his counsel did not have adequate time to prepare. We cannot agree.

Tharpe was charged in October 2009. At the time of his initial hearing, his family hired an attorney to represent him, and Tharpe's trial was set for February 2010. In December 2009, that attorney withdrew because Tharpe's family could not pay him, and a public defender was assigned. The public defender moved for continuance on February 19, 2010. The trial court granted the motion and rescheduled Tharpe's trial for June 28, 2010. On March 1, Tharpe's family retained another attorney. On June 21, that attorney filed for a continuance, which the trial court granted, and Tharpe's trial was rescheduled for August 9. Counsel sought another continuance August 4, and the trial court denied it. On the day scheduled for Tharpe's trial, August 9, the attorney withdrew.

On August 20, Tharpe's fourth attorney, hired by his family, entered an appearance. The trial court scheduled Tharpe's trial for November 22, over a year after his initial hearing. On November 19, Tharpe's attorney sought a continuance, claiming she did not have adequate time to prepare for trial. The trial court denied that motion, and Tharpe's trial was held November 22.

In the motion for continuance, Tharpe's counsel asserted she did not receive his case file until September 1. She claims the case file did not have transcripts of interviews taken before she entered her appearance and she did not receive important documents from the State until a

**3.** Tharpe acknowledges his motion for continuance was not pursuant to statute.

week before the trial. She wanted Tharpe's trial rescheduled "at the court's earliest convenience, but not prior to February 1, 2011," because she would be starting "a fifteen (15) day jury trial in federal court on January 7, 2011." (App. at 88.)

The trial court did not abuse its discretion in denying Tharpe's continuance. Tharpe's case, consisting of one felony count, had been ongoing for over a year. In *Elmore v. State,* 657 N.E.2d 1216, 1218–19 (Ind.1995), our Indiana Supreme Court upheld the denial of a continuance in a case involving five felony charges, when the attorney had only one month to prepare. Similarly we found no abuse of discretion when a court denied a motion for continuance in a murder case because the case "had been pending for quite some time" and two months was "adequate time [for counsel] to prepare." *Schmid v. State,* 804 N.E.2d 174, 178 (Ind. Ct.App.2004), *trans. denied.* In light of this precedent, we cannot say the trial court abused its discretion when it denied Tharpe's final motion for continuance.

### 3. *Sufficiency of Evidence*

When reviewing sufficiency of evidence to support a conviction, we consider only the probative evidence and reasonable inferences supporting the trial court's decision. *Drane v. State,* 867 N.E.2d 144, 146 (Ind.2007). It is the fact-finder's role, and not ours, to assess witness credibility and weigh the evidence to determine whether it is sufficient to support a conviction. *Id.* To preserve this structure, when confronted with conflicting evidence, we consider it most favorably to the trial court's ruling. *Id.* We affirm a conviction unless no reasonable fact-finder could find the elements of the crime proven beyond a reasonable doubt. *Id.* It is therefore not necessary that the evidence overcome every reasonable hypothesis of innocence; rather, the evidence is sufficient if an inference reasonably may be drawn from it to support the trial court's decision. *Id.* at 147.

Attempted murder occurs when a person "engages in conduct that constitutes a substantial step toward commission" of "knowingly or intentionally kill[ing] another human being." Ind.Code §§ 35–41–5–1 (attempt); 35–42–1–1 (murder). Tharpe argues the State did not prove he intended to kill Officer Churchman because Tharpe was acting in self-defense. Intent to kill may be inferred from the deliberate use of a deadly weapon in a manner likely to cause death or serious injury. *Bethel v. State,* 730 N.E.2d 1242, 1245 (Ind.2000). Discharging a weapon in the direction of a victim is substantial evidence from which a jury may infer intent to kill. *Fry v. State,* 885 N.E.2d 742, 750 (Ind.Ct.App.2008). The record leaves no doubt that Tharpe shot at Officer Churchman. Therefore, we review whether the State sufficiently rebutted Tharpe's claim of self-defense.

Self-defense is a legal justification for what would otherwise be a criminal act. *Brown v. State,* 738 N.E.2d 271, 273 (Ind.2000). A person is justified in using "reasonable force" against another to protect himself from what he reasonably believes to be the imminent use of unlawful force. *Id.; see also* Ind.Code § 35–41–3–2. To prevail on a claim of self-defense, the defendant must present evidence that he: (1) was in a place he had a right to be, (2) did not provoke, instigate, or participate willingly in the violence, and (3) had a reasonable fear of death or great bodily harm. *Wilson v. State,* 770 N.E.2d 799, 800 (Ind.2002). An initial aggressor or a mutual combatant, whether or not the initial aggressor, must withdraw from the encounter and communicate the intent to do so to the other person before he may claim self-defense. *Id.* at 801. When a

defendant claims he acted in self-defense, the State must disprove or rebut at least one element of self-defense beyond a reasonable doubt. *Carroll v. State*, 744 N.E.2d 432, 433–34 (Ind.2001). The State may do so by presenting additional evidence or by relying on the evidence in its case-in-chief. *Id.*

 Tharpe asserts he acted in self-defense because he thought he was shooting at people who had shot at him earlier in the evening. Tharpe testified a group of men confronted him earlier in the evening and shot at him. He testified after the men shot at him he "turned and like, very fast mashed (sic) and turned in the alley and I got out the truck, I had the gun with me and I went to try to go find them. You know, they was shooting at me so, I basically was going to confront them anyways." (Tr. at 285.) Tharpe's statement indicates he withdrew from the previous altercation, but planned to return as an aggressor. In addition, Officer Churchman was in a marked police car, identified himself as a police officer multiple times, and instructed Tharpe to put his hands in the air. He testified Tharpe "star[ed]" at him for "three to four seconds," (*id.* at 43), and then opened fire. That testimony negates two requirements of Tharpe's self-defense claim—that he was not the initial aggressor, and that he reasonably believed he was in imminent danger. Therefore, the State rebutted Tharpe's claim of self-defense.

## CONCLUSION

Tharpe did not show the judge who presided over his case was biased or prejudiced. Nor did he demonstrate his trial was unfair. The trial court did not abuse its discretion when it denied his motion for continuance, and the evidence is sufficient to support his conviction. Accordingly, we affirm.

Affirmed.

BAKER, J., and BRADFORD, J., concur.